MARGARET BREWSTER *et al.*

*v.*

JOHN D. CAHILL *et al.*

*Opinion filed October 25, 1902—Rehearing denied December 4, 1902.*

1. PLATS—*conveyance carries title to center of street in case of common law dedication.* A conveyance of property abutting upon a street shown upon a plat, which plat is not sufficient to constitute a statutory dedication, carries with it the fee of the soil to the center of the street, although the property is conveyed by lot or block number only, unless the title to the street is expressly reserved to the grantor or excluded from the grant.

2. DEEDS—*intention to exclude street must appear from the deed.* The intention of a grantor to exclude land in the street from the operation of the conveyance must appear from the language of the deed, as explained by the surrounding circumstances.

3. PLEADING—*what must be alleged in a bill claiming title to streets.* A bill by the heirs of the owner of a platted tract, where the plat was not sufficient for a statutory dedication, to enjoin defendants from mining coal under the streets of the subdivision, should set forth the language of the deeds and the surrounding circumstances relied upon by the complainants to rebut the presumption that such deeds conveyed the fee of the soil in the street with the abutting property, otherwise an averment that their ancestor had conveyed many of the lots designated on the plat to divers persons in fee simple must be held to be an averment of absolute sale, carrying title to the center of the street with the abutting property.

4. TRIAL—*right of chancellor to order master to re-open case.* If the defendant, relying upon the insufficiency of the complainant's evidence, introduces no evidence until after the master has filed his report, the chancellor may, upon a proper showing, order the master to re-open the case and hear the defendant's evidence.

WRIT OF ERROR to the Circuit Court of LaSalle county; the Hon. JOHN H. MOFFETT, Judge, presiding.

FRED T. BEERS, for plaintiffs in error.

THOMAS N. HASKINS, for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the plaintiffs in error in the circuit court of LaSalle county to enjoin the defendants in error from mining and removing the coal underlying certain streets and lots of which plaintiffs in error claim to be the owners, located in the city of Peru, in said county, and for an accounting for the value of coal underlying said streets and lots which it was claimed had been mined and removed by the defendants in error. The defendants in error filed a demurrer to so much of the bill as charged them with mining and removing coal underlying the streets of said city, and answered so much of the bill as charged them with mining and removing coal underlying the lots owned by plaintiffs in error and the land lying between said lots and the center line of the adjoining street. The court sustained the demurrer, and a replication having been filed to the answer, the cause was referred to the master, who reported that the plaintiffs in error were entitled to recover from the defendants in error the sum of $3046.80 for coal underlying the lots belonging to plaintiffs in error and the land lying between said lots and the center line of the adjoining street, mined and removed by the defendants in error, and the court having sustained exceptions to the master's report, a decree was entered dismissing the bill for want of equity, and a writ of error has been sued out from this court to reverse said decree.

It was averred in the bill that Theron D. Brewster in the year 1837 was the owner in fee of certain lands located in LaSalle county; that in the month of August of that year one Henry L. Kinney, as agent of Brewster,

platted and subdivided a portion of said lands as the
"Town of Ninewa," which plat and subdivision were after-
wards ratified and recorded in the office of the recorder
of deeds of said county by Brewster; that in the year
1857 Brewster platted and subdivided other of said lands
adjoining said town of Ninewa as "Brewster's addition
to Ninewa," which plat was filed for record in the office
of the recorder of deeds in said county; that afterwards
said Brewster sold and conveyed in fee simple to various
persons substantially all of the lots and blocks desig-
nated upon said plats; that said Brewster died intestate
on the 10th day of March, 1897, seized of lots 1 and 2 of
block 57, in Ninewa, leaving him surviving Margaret
Brewster, his widow, and Sylvia A., Jessie, Benjamin D.,
Theron D., Margaret and Frank, as his children and sole
heirs-at-law; that Frank has conveyed his interest in
the property in question to his brothers and sisters; that
during the life of Brewster both of said subdivisions be-
came a part of the city of Peru; that in the year 1879 the
city council of the city of Peru attempted to grant to one
James Cahill the perpetual right to mine and remove the
coal underlying all of the streets east of the west line of
Putnam and Marion streets, as shown on said plats; that
Cahill died testate in the year 1895, leaving him surviv-
ing John D., Cornelius J. and Kate Cahill as his children
and sole heirs-at-law; that he appointed John D. Cahill,
Cornelius J. Cahill and Michael Flaherty executors and
trustees under his will; that in the year 1896 the city
council of the city of Peru attempted to grant to said
trustees, their successors and assigns, the right to mine
and remove coal in certain other of the streets shown
upon said plats, and that said James Cahill in his life-
time, and said trustees since his death, have wrongfully
mined and removed large quantities of coal from under
said streets and said lots 1 and 2 in block 57, and the
land lying between said lots and the center line of the
adjoining street.

It is conceded that the plat of the town of Ninewa was not a good statutory plat, as the provisions of the statute providing for the recording of town plats were not complied with, and that the title of the streets shown upon the plat did not vest in the municipality, but remained in Brewster, the original proprietor. There is a controversy as to whether the plat of Brewster's addition to Ninewa was a good statutory plat. Without specifically passing upon that question, for the purposes of this decision the contention of the plaintiffs in error that said plat was not a good statutory plat, and that the title to the streets shown thereon did not pass to the municipality but remained in Brewster, the original proprietor, may be conceded.

The first question arising upon this record is, did the court err in sustaining a demurrer to so much of the bill as charged the defendants in error with mining and removing coal underlying the streets of the town of Ninewa and Brewster's addition to Ninewa? There is no averment in the bill that James Cahill or the defendants in error mined and removed coal underlying any of said streets other than that adjoining lots 1 and 2, block 57, prior to the time that Brewster sold and conveyed the lots and blocks adjoining thereto. The intendments being against the pleader, it must be presumed that all the coal mined and removed underlying said streets, except the street adjoining lots 1 and 2, block 57, was mined and removed subsequent to the time that Brewster had parted with title to the land adjoining said streets.

The law is well settled that a conveyance of premises abutting upon a street, in case of a common law dedication, by operation of law carries with it the fee of the land underlying the street to the center of the street, subject to the public easement; and this is true although the conveyance describe the premises conveyed by the lot or block number only, unless the title to the street is expressly reserved to the grantor or specifically excluded

from the grant, and the intent to exclude the street must appear from the language of the deed, as explained by surrounding circumstances. *Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235; *Thomsen* v. *McCormick,* 136 id. 135; *Henderson* v. *Hatterman,* 146 id. 555; *Clark* v. *McCormick,* 174 id. 164; *Davenport and Rock Island Bridge Railway Co.* v. *Johnson,* 188 id. 472; *Eisendrath & Co.* v. *City of Chicago,* 192 id. 320; *Huff* v. *Hastings Express Co.* 195 id. 257.

In *Thomsen* v. *McCormick, supra,* on page 145 it is said: "The dedication of Snider street was not a statutory dedication and the fee of the land did not vest in the city of Chicago.  *  *  *  There was, however, a good common law dedication of Snider street, and such being the case, the fee remained in Smith, the original proprietor, burdened with an easement in favor of the public; and when, on November 27, 1863, the heirs and devisees of Smith sold and conveyed blocks 12 and 13, and comprising the lands on both sides of the street, to Samuel J. Walker, the grant and conveyance of the abutting premises carried, by operation of law, the fee of the street or title to the land on which it was located, subject, however, to the public easement, to said Walker, and the fee or title continued to pass, as part and parcel of each respective grant, with the several grants of the abutting premises, until it finally vested in Henry H. Walker, but still burdened with the easement. ·  *  *  *  A claim is made by appellants that the description in the deed of 1863, and in the subsequent conveyances in the same chain of title, was merely by the lot and block numbers, and that this excluded the street.   But in the *Hamilton case, supra,* the descriptions were of like character, and it was held that the fee in the streets, burdened with the offer of dedication, passed by the conveyances to the grantees of the adjoining lots, and it was there said: 'The doctrine is, that a conveyance of a lot abutting on a highway or street, where there has been no statutory

dedication, conveys the grantor's interest in the street to the center.'"

In *Clark* v. *McCormick, supra,* on page 171 the court say: "The dedication was, however, good as a common law dedication, and the legal title in the grounds so set apart as for streets remained in the original owner.   *   *   * The title thus remaining in a proprietor of such a plat is not an absolute fee, but is a fee burdened with the offer of dedication, and it is retained only so long as the proprietor goes no further than to hold out an offer to dedicate.   If he shall sell lots or blocks laid out and shown upon the plat according to their descriptions or numbers given by the plat, the title resting in him in fee to one-half the street next adjoining the lot or block so sold passes, by operation of law, to the purchaser of such lot or block."

In *Davenport and Rock Island Bridge Railway Co.* v. *Johnson, supra,* which was a bill to enjoin the railroad company from laying its tracks in the street in front of Johnson's property, who was a remote grantee of the original proprietor, it was held that Johnson was the owner of the fee of the street burdened by the public easement, and that the railroad company could not appropriate the street, with the consent of the city, without having first extinguished, by condemnation or otherwise, the title of Johnson therein.   On page 477 the court say: "If there was a failure to observe the requirements of the statute and the plat operated as a common law dedication, a conveyance of complainants' lots bounded by the street would operate as a conveyance of the fee to the center of such boundary.   In such case they would own to the center of the street burdened with the easement."

In *Henderson* v. *Hatterman, supra,* on page 564 it was held: "It is well settled, as a general rule, that 'a grant of land bounded upon a highway   *   *   *   carries the fee in the highway to the center of it, provided the grantor

at the time owned to the center, and there be no words or specific description to show a contrary intent.' (3 Kent's Com. marg. p. 434; Elliott on Roads and Streets, p. 549, and cases in note 2.) When a deed bounds an estate by or on a public way, the presumption is, if nothing else appears, that the center of the way is the boundary line. (*Dean* v. *Lowell*, 135 Mass. 55.) It will not be supposed that a man would care to keep title to the highway in himself when he had parted with the land bordering thereon. (*Salter* v. *Jonas*, 39 N. J. L. 469; 3 Washburn on Real Prop. marg. p. 635.) The presumption that the owner of the adjoining land intended to convey his interest in the highway may be overcome, either by the use of express terms excluding it, or by such facts and circumstances as show an intention to exclude it. The intent to exclude the highway must appear from the language of the deed, as explained by surrounding circumstances. (*Mott* v. *Mott*, 68 N. Y. 246; Elliott on Roads and Streets, p. 550.) It makes no difference in the application of the rule whether the land abutting upon the highway is a lot which bears a certain number, or is a farm, called 'black-acre,' or otherwise. (*Kimball* v. *City of Kenosha*, 4 Wis. 321; *Berridge* v. *Ward*, 10 Com. B. Rep. 400.) Although the measurement set forth in the deed brings the line only to the side of the highway, the title will still be carried to the center of it, unless such words are used and such metes and bounds are set forth as show a contrary intention. (3 Kent's Com. marg. p. 434, note 37; Elliott on Roads and Streets, p. 550; *Paul* v. *Carver*, 26 Pa. St. 223; *Cox* v. *Freedley*, 33 id. 124; *Johnson* v. *Anderson*, 18 Me. 76; *Cottle* v. *Young*, 59 id. 105; *Woodman* v. *Spencer*, 54 N. H. 507.) Of course, it is understood that the title to the center of the highway, which thus passes by the grant of the adjoining land, is subject to the easement of the public in the highway."

The bill avers "that after the filing for record of the two plats aforesaid, the said Theron D. Brewster did sell

and convey to divers persons many of the lots set forth
and designated on the plats aforesaid, making and con-
veying title to such lots to the various persons purchas-
ing the same, severally, in fee simple." This averment
shows an absolute conveyance of the lots and blocks
abutting upon said streets without excluding from the
terms of the conveyance the streets, and the subsequent
averment "that the remainder of the estate in said parts
and parcels of land designated on said several plats as
streets, public highways and places remained vested in
him, the said Theron D. Brewster, as his estate, with the
title thereto in fee simple remaining in him undisturbed
by reason of anything done in said acts of dedication or
anything contained in the several plats and certificates
aforesaid, or any or either of them, at the time of the said
several acts of dedication, or either of them," was but
the conclusion of the pleader, and does not rebut the
presumption that Brewster intended to and did convey
his interest in the streets at the time he conveyed the
lots abutting thereon. The intent to exclude the streets
from the operation of the conveyance by which the abut-
ting lots were transferred "must appear from the language
of the deed, as explained by the surrounding circum-
stances." (*Henderson* v. *Hatterman, supra.*) The language
of the deeds and the surrounding circumstances relied
upon to rebut the presumption that the streets were con-
veyed with the abutting property should have been set
forth, otherwise the averment that "said Theron D. Brew-
ster did sell and convey to divers persons many of the
lots set forth and designated on the plats aforesaid, mak-
ing and conveying title to such lots to the various per-
sons purchasing the same, severally, in fee simple," must
be held to be an averment of the absolute sale of the lots
abutting upon said streets, which would have the effect,
by operation of law, to transfer to the several grantees,
subject to the public easement, the title of the land un-
derlying the streets to the center of the streets abutting

upon their respective lots, and to divest Theron D. Brewster and the plaintiffs in error, as his widow, heirs and personal representatives, of all interest therein.   As it does not appear from the bill that the plaintiffs in error were the owners of or had any interest in the streets in question at the time it is claimed the underlying coal was mined and removed therefrom, the court properly sustained the demurrer.

The second question raised upon this record is,. did the court err in sustaining exceptions to the master's report, wherein the master found that the plaintiffs in error were entitled to recover the sum of $3046.86 for coal mined and removed from under lots 1 and 2, block 57, and the lands lying between said lots and the center line of the adjoining street?   The master took the evidence of a number of persons, who testified that the foundations and walls of a number of buildings located in the vicinity of said lots had settled and cracked, indicating an underground disturbance.   He also took the evidence of W. H. Irwin, a civil engineer, who was appointed by the court to make a survey of the mines being operated by the defendants in error, who gave it as his professional opinion that coal had been mined and removed from said premises.   It appeared that some of the rooms and passageways in the mine had filled up and that others were in a dangerous condition, and that some had been closed up by the defendants in error.   On cross-examination Mr. Irwin testified: "The closest I got to lots 1 and 2 in block 57 is about 625 feet, at terminal in block 28, which is almost north of lots 1 and 2.   It was about 800 feet from nearest north-east point I reach to the lots 1 and 2. In east direction it was about 2200 feet from lots 1 and 2 and about 2200 feet from southerly point to the lots.   I could not get south of them at all.   I cannot say as a matter of fact, I can only say as my opinion, the coal has been taken out from under lots 1 and 2, block 57.   I can not say this from my survey or anything I found there.

The west coal face might extend 100 feet south and then cut off east and not come within 100 feet of lots 1 and 2, but it is not probable. The Cahills could, if they saw fit to do so, work out the coal as indicated on the maps on file in the recorder's office. I do say, as a matter of fact, they have mined at least 100 feet further than is shown by their plats on block 28. It is 275 feet from nearest part of lots 1 and 2 to face of the coal, as shown by plat in recorder's office. This would leave a margin of 130 feet."

It appeared that coal was worth two dollars per ton. On this testimony the master filed a report, in which he found the defendants in error had mined and removed from under lots 1 and 2, block 57, 1523.4 tons of coal, of the value of $3046.86. The defendants in error, relying upon the insufficiency of the plaintiffs' evidence, took no evidence until after the master had filed this report. They then moved the court to re-open the case before the master and allow them to introduce evidence to show that no coal had been mined and removed from lots 1 and 2, block 57. A day or two before this motion was made the plaintiffs in error had notified the attorney of the defendants in error that they would make a motion for a change of venue from the chancellor before whom said motion to re-open the case before the master and take testimony was subsequently made. The court, upon what it deemed to be a sufficient showing, allowed the case to be re-opened before the master, and permitted the defendants in error to introduce evidence to the effect that no coal had been mined or removed from under lots 1 and 2, block 57. Subsequently, and after the introduction of this testimony, the master filed a supplemental report, in which he adhered to his original findings and to which exceptions were sustained by the court. The venue had not been changed at the time the court was asked to pass upon the motion to re-open the case before the master and for leave to the defendants in error to take evidence, and in view of the showing made and the

character of the evidence upon which the findings of the master were based, we do not think the chancellor erred in ordering the master to re-open the case and to hear the evidence of the defendants in error.

Neither do we think the court erred in sustaining exceptions to the master's original and supplemental reports, as the testimony introduced by the defendants in error on the supplemental hearing before the master was well nigh conclusive that no coal had been mined and removed from under said lots 1 and 2, block 57, or the lands lying between said lots and the center line of the adjoining street. The burden of proof was upon the plaintiffs in error to show that the defendants in error had mined and removed coal underlying their land. This, upon the whole evidence, they failed to do, and upon that issue the court properly found for the defendants in error.

We have examined this record with care, and finding no reversible error therein the decree of the circuit court will be affirmed.

*Decree affirmed.*